Statement of the Case.
MONROE, C. J.
Defendant was prosecuted under an affidavit, sworn and subscribed to on March 1, 1918, and reading, in part, as follows:
“That on the 1st day of March, 1918, being in the parish of Orleans aforesaid, and within the jurisdiction of the juvenile court of said parish, one Edwin L. Clark did, then and there, willfully neglect and refuse to provide for the support of his minor child, Courtney, aged 3% years, and the aforesaid minor child of the said Edwin L. Clark then and there was, and now is, in destitute and necessitous circumstances.”
The authority for the prosecution is found in Act 34 of 1902, which declares:
“That any person who shall, without just cause, desert or willfully neglect to provide for the support of, his wife or minor children in destitute or necessitous circumstances, shall be deemed guilty of a misdemeanor, and shall be punished by a fine not exceeding $100, or by imprisonment in the parish prison, * * * or both, in the discretion of the court; * * * provided that before the trial (with the con *331 sent of the defendant) or after conviction, instead of imposing the punishment hereinbefore provided, or in addition thereto, the court in its discretion having regard to the circumstances and financial ability of the defendant, shall have power to pass an order, which shall be subject to change, * * * from time to time as the circumstance may require, directing the defendant to pay a certain sum weekly for the space of one year to the wife, and to release the defendant from custody on probation,” etc.
Upon the hearing of the charge, on March 28th, and after the evidence had been received, counsel asked that defendant be discharged, on the ground that the court was without jurisdiction to entertain the prosecution, for the reasons (as stated by the counsel) that — •
“The law is that, to constitute the crime of desertion, or of failure to support, the desertion or failure to support must have taken place within the state of Louisiana; desertion of a child in Arkansas, or failure to support a child in Arkansas, is not punishable under the laws of Louisiana. An affidavit for failure to support or for desertion of a minor child, made by the mother, cannot be entertained when the mother has never called on the father to furnish money for the child or to support the child. I make this my plea to the jurisdiction of the court.”
And thereupon the court found, as facts, that defendant had been, and (as we understand it) was, then, resident in New Orleans; that his wife, with the child in question, had come to this city on February 21st (last preceding); that defendant had neither furnished nor offered any support for the child since the date of its arrival; that he was charged with its nonsupport and abandonment; and that, under the ruling of this court in State v. Fick, 140 La. 1063, 74 South. 554, such charge will lie, though a child may be domiciled elsewhere than the father against whom it is brought. And the plea to the'jurisdiction was overruled.
Proceeding then to the conviction and sentence of defendant, the court held him to be the husband of the prosecuting witness and father of the child in question, held him to be guilty of the charge preferred against him, and sentenced him to pay $50 a month, in fortnightly installments of $25, -and to furnish an appearance bond. Defendant then moved for a new trial, upon various grounds, and, upon its being overruled, took a formal bill of exception, containing the following, with other, recitals, to wit:
“Be it remembered that the evidence shows that * * * New Orleans was never the matrimonial domicile” (of defendant and the prosecuting witness, if they were ever • married); “that the prosecuting witness arrived in New Orleans in February, 1918, established .quarters for herself, and, neither after her arrival in the state of Louisiana nor at any time theretofore, did she make demand upon defendant either to care for her or the child; that the first intimation that defendant had that the 'prosecuting witness was in the city of New Orleans was the service upon him of a warrant of arrest, charging him with the desertion of and failure to support a minor child in necessitous circumstances.”
Save in so far as it is stated that defendant is charged with the “desertion” of the child, the foregoing recitals are not in conflict with the statement per curiam, which forms part of the bill, and from which we make the following excerpt:
“The evidence taken in this matter * * * is part of the bill of exception. It shows that Clark had been here for several years, is in business here; * * * that Clark had done nothing for this child since he abandoned it, in September, 1914, and had done nothing for the child here, within the jurisdiction of the court, for some days before this affidavit was filed.
“It” (the question here involved) “is not, primarily, a question of abandonment; the charge against Clark is for nonsupport of his child, under the statute. That fact, of nonsupport, according to the finding of the court, exists now, while the child has been within the jurisdiction of the court, and before the child came here with its mother. Ail parties are within the jurisdiction of the court and are subject to its processes.”
Opinion.
[1-3] Of eight points reserved in the bill of exception, defendant now insists upon but *333 four, to wit, that the trial court erred in the holding:
“That, where the evidence shows that the alleged desertion and failure to support took place outside of the state, an offense cognizable by the courts of the state had been committed.
“(2) That, independently of a demand for support, on the part of the mother, the court cannot entertain an affidavit for failure to support.
“(3) That, though there has never been a matrimonial domicile in the state of Louisiana, the wife may come into the state, establish an independent domicile of her own, and, without calling upon her husband to support a child, proceed against him criminally for nonsupport.
“(4) That the amount allowed' for the support of the child is excessive.”
This being a criminal prosecution (State v. Barilleau, 128 La. 1033, 55 South. 664), this court has no jurisdiction to review questions of fact, but must take the facts as found by the trial judge (Constitution of 1913, art. 118, § 1; State v. Baurens, 117 La. 136, 41 South. 442). The trial judge has found that defendant, being domiciled in New Orleans, had done nothing towards the support of his minor child since it, too, has been in New Orleans, and within the jurisdiction of the court. It is true that he also found that defendant had done nothing for the child since he abandoned it (in Arkansas) “in September, 1914,” but that finding was irrelevant, since what he may have done in Arkansas constituted no offense against the laws of Louisiana, and we do not understand that defendant was convicted therefor. ' It is to be observed that our statute reads “desert, or willfully neglect to provide for the support,” etc., and that defendant was charged with willfully neglecting and refusing to provide, etc., but not with desertion. Even, then, though it be contended that desertion is an affirmative act, which cannot be repeated until and unless the deserter has returned to' those whom he has deserted, the same cannot be said of neglect to provide concerning which, in State v. Baurens, supra, it was held that the .statute here invoked contemplates that a man shall, at all times, provide for his wife and children, in destitute or necessitous circumstances, and that his neglect to do so, during a period of time not covered by a previous conviction, is a distinct offense to which the plea of autre fois convict, predicated upon such conviction, is not good. See, also, State v. Fick, 140 La. 1067, 74 South. 554. In the case last mentioned, the defendant, with his wife and minor child, were domiciled in New Orleans, where he neglected and refused to support them. In consequence of his treatment, the wife was obliged to abandon him, taking the child with her. She, however, remained in New Orleans for a time, and defendant was condemned to pay alimony for the support of the child. Somewhat later, she removed with the child to Baton Rouge, where she found the means of earning a livelihood, and, as she stated, finding peace of mind, whereupon defendant stopped paying the alimony for the child, and the question presented to the . court was whether, in view of her removal from the place where he lived, he could be compelled to continue such payment. In holding that he could be so compelled, the court used language intended to be applied to the case before it, and whether, if the wife, in that case, had gone to another state, there to remain with the child, the ruling would have been the same, was not before the court and .was not decided. The statute here in question makes no discrimination between people who come to Louisiana from other states and those who were born and married here, nor between cases in which a deserted wife and minor child live in one parish and the recreant husband in another. The wife and child are entitled to the benefit of the law penalizing the desertion and neglect by the husband and father, without being subjected to the condition that they shall remain in a particular place, where, perhaps, *335 they may be unable to find the means of living, and the husband and father, continuing his desertion and neglect, also continues to be liable to the penalty wherever the statute can reach him. But the statute cannot reach Mm beyond the confines of the state, and we are not prepared to say that it extends its protection to a wife and child, inhabitants of another state for whose citizens the General Assembly of 'Louisiana has no authority to legislate.
[4-6] The proposition that, under our statute, “independently of a demand for support on the part of the mother, the courts cannot entertain an affidavit against the father for failure to support,” does not appear to us to be well founded. No one is in a better position to lmow whether the father supports his child, and no one should be in a better position to know whether the child is in need of support, than the father himself. And the law imposes a penalty upon him if he fails to furnish such support, without requiring the mother to remind him of his obligation. The statute, however, provides that, in order that he may earn the penalty, the neglect of the father must be willful; in other words, he must know, or there must be a presumption that he knows, that he is violating the law, and neither that knowledge nor the presumption seems to be here established. Thus, in leaving the state of Arkansas, in 1914, defendant entered Louisiana free of guilt, so far as this state is concerned, and he could only have become guilty here, of neglecting to support his child, by a combination of circumstances, to wit, by the coming of the child into the state, and by his continuing, after being informed of its coming, to neglect to provide for its support. It is, however, stated in the bill of exception, and not controverted by the trial judge, that defendant did not know of the coming of his wife and child into Louisiana until, following the affidavit, he was served with the warrant of arrest, so that, when charged with the offense for which he is prosecuted, he had not “willfully” committed it; and we find it impossible to conceive that a man, innocent of offense against our laws, should, involuntarily, at any moment of the day or night, become guilty of offending against a statute requiring willful conduct, merely by reason of the entry into the state, without his knowledge or consent, of a third person over whose movements he exercises no control.
It is therefore ordered that the conviction and sentence herein appealed from be annulled and the defendant discharged from custody.